FILED

2013 Dec-13  PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIE EVANS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No.  2:12-cv-03518-HGD |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (hereinafter DIB) and Supplemental Security Income (hereinafter SSI). (Doc.1).  The parties filed written consent to the exercise of jurisdiction by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (*See* Doc. 14).  Upon consideration of the administrative record and the memoranda of the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED and this action be DISMISSED.

## I.      Proceedings Below

Plaintiff filed an application for a period of disability and disability insurance benefits on June 12, 2009, in which he alleged that he became unable to work on January 1, 2003. (Tr. 21). On September 23, 2008, these claims were initially denied by the agency. (Tr. 73-77). On October 8, 2009, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which took place on September 22, 2010. On October 29, 2010, the ALJ issued a decision denying plaintiff's application. (Tr. 18-30). The Appeals Council denied plaintiff's request for review on August 8, 2012. (Tr. 1-6). After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has

a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R.

§ 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove

the existence in significant numbers, of jobs in the national economy that the claimant

can  do  given  the  RFC,  age,  education  and  work  experience.    20  C.F.R.

§§ 404.1520(g) and 404.1560(c).

The ALJ strictly adhered to this decision-making protocol.  She made the

following findings of fact and conclusions of law:

> 1.  The claimant has not engaged in substantial gainful activity since
> June 12, 2009, the application date (20 C.F.R. § 416.971, *et seq.*);
>
> 2.  The claimant has the following severe impairments:  status post
> aortic valve replacement and status post cerebrovascular accident (20
> C.F.R. § 416.920(c));
>
> 3.   The claimant does not have an impairment or combination of
> impairments that meets or medically equals one of the listed
> impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.
> §§ 416.920(d), 416.925 and 416.926).
>
> 4.  The claimant has a residual functional capacity to perform light work
> as defined in 20 C.F.R. § 416.967(b) except he can occasionally climb
> ramps and stairs; never climb ladders, ropes or scaffolds; occasionally
> balance,  stoop,  kneel,  and  crouch;  and  never  crawl.    He  has  no
> restrictions in handling, fingering or feeling with dominant right upper
> extremity; but can only use his non-dominant left upper extremity as a
> helper hand.  He must avoid all exposure to hazardous conditions such
> as height and moving machinery; and
>
> 5.  The claimant is capable of performing past relevant work as a light
> cleaner, DOT #381.670-014, which is classified as light and unskilled
> with an SVP of 2.  This work does not require the performance of work-

related activities precluded by the claimant's residual functional
capacity (20 C.F.R. § 416.965).

(Tr. 21-30).

The Vocational Expert (VE) found that plaintiff could return to past work "as
a light cleaner." (Tr. 64-65). According to plaintiff, there is no DOT code for cleaner
at the light level and that the code for cleaner cited by the VE, 381.670-014, does not
exist. Plaintiff states that the job of general laborer and cleaner, DOT # 381.687-014,
is generally performed at the medium to heavy level of exertion. (Pl. Br. at 7-8).

Plaintiff was 52 years old at the time of the ALJ's decision. According to
plaintiff, the ALJ's RFC assessment would better comport with sedentary work based
on all the postural functions which plaintiff is limited to performing only on an
occasional basis. (*Id.* at 8). Once a claimant found capable of performing only
sedentary work attains age 50, the Medical-Vocational Guidelines direct the ALJ to
find the claimant disabled. 20 C.F.R. § 404, Subpt. P, App. 2, Rule 201.12 (2009).
He states that, based on the testimony provided in the record, the ALJ's RFC findings
are not based on substantial evidence. (*Id.* at 9).

The ALJ reviewed the medical evidence presented with regard to plaintiff's
claim of disability and summarized her findings in her opinion concerning how she

arrived at the RFC she determined to be applicable to plaintiff.  Plaintiff has not alleged that the ALJ's factual findings are incorrect.

The ALJ noted that plaintiff reported that his ability to work was limited due to heart problems and no feeling in his left hand as the result of a stroke.  Plaintiff also claimed that he suffered from shortness of breath and that he was unable to lift anything. (Tr. 25).  He reported that his arms were too weak to lift anything and that he could only walk a block before becoming fatigued.  (*Id.*).  The ALJ further noted that, at the hearing, plaintiff stated that his chest pain occurs when he walks and that he also has chest pain when only sitting.  Plaintiff stated that when he has chest pain or dizziness, he takes several Tylenol and that he will lie down for a few hours a day.  Plaintiff alleges that he uses a cane for balance at all times.  He also stated that he had a stroke which has resulted in him having no feeling in his left hand up into his arm.  (*Id.*).

The ALJ found that plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms but that plaintiff's statements with regard to the intensity, persistence and limiting effects of these symptoms were not credible to the extent that they are inconsistent with the RFC.

In particular, the ALJ stated that the medical evidence showed that plaintiff was admitted to the hospital in May 2009.  He was found to have severe aortic

insufficiency. While in the hospital, he developed signs of decreasing left ventricular function. It was noted at that time that he had severe dental decay that was believed to be the likely source of his endocarditis.[1] Plaintiff underwent removal of his poor dentition and, on May 28, 2009, Dr. Gregory Thomas performed an aortic valve replacement, aortoplasty, and placed a pericardial patch for reconstruction of the pericardial defect on plaintiff. (Tr. 26).

Plaintiff had a post-operative visit with Dr. Thomas on June 18, 2009. Dr. Thomas noted that plaintiff's chest incisions were healing well without signs of infection. He noted that plaintiff was doing satisfactory overall. (*Id.*). Plaintiff was advised to follow up with a visit to another physician in the next two to three weeks. However, there is no other medical record reflecting that this visit ever took place. There is a Physical Disability Confirmation form completed by Dr. Thomas on June 25, 2009, in which he stated that plaintiff would be unable to work for three months from a surgical standpoint, but that all of his wounds and all of his restrictions should be lifted by that time. (*Id.*).

The ALJ also noted that plaintiff claims to have limitations in the use of his left hand following a stroke. The ALJ assumed that plaintiff's claim of deficits in his

---

[1] Endocarditis is an inflammation of the linings of the heart and heart valves. *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002088/.

upper left extremity are generally true based on plaintiff's physical examination. (Tr. 26).

On September 9, 2009, Dr. M. Scott Touger performed a physical examination and an echocardiogram of plaintiff, at the request of the state agency. The results of the electrocardiogram were normal. (Tr. 27). Plaintiff's chief complaint to Dr. Touger was chest pain. Plaintiff further advised Dr. Touger that a stroke he suffered in 1995 left him with significant loss of use of his left hand. (*Id.*). Plaintiff reported to Dr. Touger that his chest pains generally came on while walking but that they could come on at any time. Although he reported to Dr. Touger that he took pain pills to help with his pain, no such medication was listed on his current list of medications.

In his examination of plaintiff, Dr. Touger noted that plaintiff's cardiovascular system had a regular rate and rhythm with no murmurs, rubs or gallops. Plaintiff's left hand indicated a wrist drop with his arm fully pronated. The dorsiflexion in plaintiff's left hand was limited to about ten degrees and the plantar flexion to 70 degrees. Plaintiff had a normal radial ulnar deviation in his left hand. While the grip strength in his left hand was 3/5, Dr. Touger noted that plaintiff was able to make a fist with his left hand. (Tr. 26).

Although not specifically referenced in the ALJ's decision, Dr. Touger also found that plaintiff had 5/5 biceps strength, 5/5 triceps strength, intact flexor and

extensor in the right hand and 5/5 interossei in the right hand.  (Tr. 223).  Dr. Touger found 3/5 deltoid strength bilaterally and mild pops and clicks in plaintiff's shoulders, but he did not opine that plaintiff had any right upper extremity "bilateral" limitations.  (Tr. 223-24).

Dr. Touger noted that plaintiff's gait was abnormal, favoring his left leg as he walked.  He was unable to walk on his toes or to squat and rise.  However, he did not use an assistive device to walk and was able to walk on his heels.  (Tr. 27).  Dr. Touger's impression was status post-aortic-valve replacement secondary to valvular vegetation and bacterial endocarditis.  He noted that, while the claimant's prior medical records stated that the origin of this problem was likely to have been poor dentition, he suspected that it was most likely from bloodstream seeding from IV cocaine use, which plaintiff admitted to using in the past.  (*Id.*).  His remaining impressions were a history of cerebral vascular accident in 1995 with residual deficit in his left hand, diffuse joint pain of unknown origin, chest pain and dyspnea[2] on exertion.  Dr. Touger stated that plaintiff could not use his left hand for "gainful activities."  He does not define the term "gainful."  (*Id.*).

According to the ALJ, although plaintiff claimed at the hearing that he was unable to ambulate without a cane, there is no evidence in the record of any

---

[2] Shortness of breath.

impairment that could reasonably cause the dizziness and balance problems alleged. When examined by Dr. Touger, plaintiff was able to ambulate without an assistive device. The ALJ noted that plaintiff's cardiovascular system tested as normal with no evidence of limitation on the echocardiogram. He further noted that any deficits incurred from his stroke occurred at least 15 years ago and did not prevent plaintiff from performing work activity in the past. (*Id.*).

Although Dr. Touger noted that plaintiff's gait was abnormal, Dr. John Maloof, the state agency consultant, observed that Dr. Touger also described normal muscle strength and reflexes in the lower extremities, suggesting normal function. Based on this, the ALJ concluded that the evidence as a whole did not support plaintiff's alleged need for an assistive device or inability to ambulate effectively. (Tr. 27).

The ALJ also stated that she considered the type, dosage, effectiveness and adverse side effects of any medication taken by plaintiff in determining his credibility and RFC. In particular, she noted that he testified that he had not taken any medications for heart problems or high blood pressure since the preceding year. Likewise, he stated that he had not seen a doctor since his surgery and that when he went to the emergency room on one occasion because of chest pain, he was only given pain pills and no prescriptions. Furthermore, plaintiff testified that lying down and resting help his symptoms. He stated that when he does have pain, dizziness and

shortness of breath, he takes a few extra strength Tylenol, which also helps his symptoms.  In addition, he has not required any treatment regarding his status post cerebrovascular accident since it occurred approximately 15 years ago.

The ALJ also questioned plaintiff's alleged limitations on his daily living activities because plaintiff's alleged limited activities could not be objectively verified with a reasonable degree of certainty and because, even if his activities are limited to the degree he alleged, it is difficult to attribute that degree of limitation to plaintiff's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed by the ALJ in this opinion and outlined above.  (Tr. 28).

With regard to the alleged limitations caused by plaintiff's stroke, the ALJ noted that these residuals were present at approximately the same level of severity prior to the date he filed his application for supplemental security income.  She states that the fact that this impairment did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work.   In assessing plaintiff's RFC, the ALJ considered the medical opinions in the record.  She gave some weight to Dr. Touger's opinion given his personal examination of plaintiff, but found that his comment that plaintiff is completely unable to use his left hand for any type of gainful activities to be rather vague because he does not define "gainful

activities." The ALJ stated that her finding that plaintiff is unable to use his left

upper extremity as more than a helper hand is generally consistent with Dr. Touger's

opinion. In his testimony, after discussing the limitations with his left hand, plaintiff

responded to questions regarding how he uses it as follows:

> ALJ: Okay. But you can kind of use it as a helper hand?
>
> Plaintiff: Yes, ma'am.
>
> ALJ: Like you said, to prop things up in your right hand?
>
> Plaintiff: Yes, ma'am.
>
> ALJ: Okay. So when you were working before, how did you manage
> things when you were working? Before your heart problems?
>
> Plaintiff: Oh, I met-you know, like both these things, you know, I could
> use-I'd use this hand to balance and prop, you know, this here hand,
> what I mostly depend on.

(Tr. 55-56).

The ALJ stated that she gave little weight to Dr. Touger's comment that

plaintiff was unable to walk more than two blocks without becoming short of breath

because this was based solely on plaintiff's self-report. Additionally, she noted that

such findings are not supported by the medical evidence, which showed a normal

cardiovascular and pulmonary examination with a normal echocardiogram. (Tr. 28).

The ALJ also considered Dr. John Maloof's opinion that plaintiff's physical

limitations were consistent with a medium exertional level, and accorded it some

weight. (Tr. 231). However, to afford plaintiff some benefit of Dr. Touger's opinion, she further reduced the RFC to the light level. (*Id.*).

The ALJ summarized her conclusions with regard to plaintiff's RFC as follows:

> After assessing the claimant's subjective allegations in light of the regulatory credibility factors, as well as the medical evidence and opinions, the undersigned finds that the claimant's impairments limit him to a restricted range of light work as lifting/carrying more than 20 pounds; performing postural movements more than occasionally, using the left upper extremity as more than a helper hand and working around hazards could exacerbate his symptoms. In sum, the above residual functional capacity assessment is supported by the record, when considered as a whole, especially in light of the course of treatment prescribed to the claimant for his impairments, the opinion evidence as discussed above, and the medical treatment records discussed above, all of which suggest greater sustained capacity than described by the claimant. Notwithstanding his allegations, treatment records and examinations do not provide evidence that would reasonably support a finding that the claimant is as physically limited as alleged. The claimant's self-reported limitations are not consistent with the medical evidence and he simply alleges a greater degree of debilitation than what objective evidence can support. Therefore, the undersigned finds the claimant's testimony credible only to the extent that it is consistent with the above residual functional capacity.

(Tr. 28-29).

During the hearing, the ALJ proposed a hypothetical question to the VE and received a response as follows:

> ALJ: Okay, all right. Now if we continue with the same individual [one of claimant's age, education, and past work experience] but they now would be limited to work at the light level of exertion, as defined in the Social Security regulations, again, who could occasionally climb ramps and stairs but never ropes, ladders or scaffolds, and now I'll say who

could occasionally handle, finger, and feel with the non-dominant left upper extremity, but has no limitations in reaching with either extremity and no restrictions in handling, fingering, and feeling with the dominant right upper extremity, and again, who should avoid exposure to hazardous conditions such as heights or moving machinery, would such an individual be able to perform any of the claimant's past work at this level?

VE: As a light cleaner.

ALJ: Okay. In addition to that light cleaner occupation, would there be other work that such an individual could perform?

VE: Yes. Other work would be security guards, 372.667-026. There are about 1,100 in the state. They are light, with an SVP of 2. Ticket sellers, 211.467-030, light and 2, Counter clerks, 249.366-010, at least 1,000, light and 2.

* * *

ALJ: All right, and what about national numbers on these occupations?

VE: Well, security guards, there would be about 125,000. Ticket sellers, about 75,000, and counter clerks, about 78,000.

ALJ: All right. Now if we continue with that same individual, but they now would be able to use the nondominant left upper extremity really only as a helper hand, but the other restrictions or abilities would remain the same as in hypothetical two, would such an individual still be able to perform the claimant's past work as a light cleaner?

VE: Yes.

* * *

ALJ: Okay, and what about the other work that you indicated?

VE: Yes.

ALJ: Okay.  And then, of course, Mr. Clark, I recognize that if I find that the claimant is limited to sedentary work, then I believe the GRIDS would apply in this case.[3]

ATTY:  Yes, ma'am.

(Tr. 64-66).

Under further questioning by plaintiff's attorney, the VE was asked to consider what level of work plaintiff could perform if he were unable to walk without an assistive device.  The VE responded that it would be mostly sedentary, but that there would be some light work available where the person would be mostly sitting.  (Tr. 68).

Given the restrictions with plaintiff's left hand, if it were necessary for plaintiff to use a cane to ambulate, the VE acknowledged that plaintiff would be unable to perform his past work as a light cleaner and other work such as a security guard.  However, the VE stated that he could still perform light work as a ticket seller or as a counter clerk where you could sit part of the time, such as a cashier.  (Tr. 68-69).

The ALJ ultimately concluded that the evidence supported a finding that plaintiff is capable of performing his past relevant work.  She also found that, after considering plaintiff's additional limitations to his ability to perform all work at the

---

[3] Once a claimant who is found capable of performing only sedentary work attains age 50, the Medical–Vocational Guidelines direct the ALJ to find the claimant disabled.  20 C.F.R. § 404, Subpt. P, App. 2, rule 201.12 (2010).

light level of exertion, there are still other jobs existing in the national economy that he is able to perform.  These include security guard, ticket seller and counter clerk. (Tr. 29).  Therefore, she held that a finding of "not disabled" was appropriate under the framework as applied in this case.

## III.   Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*,

703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the Court acknowledges that judicial review of the ALJ's findings is limited in scope, the Court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## IV.   Discussion

Plaintiff bears the ultimate burden of proving disability.   *See* 42 U.S.C. § 423(d)(1)(A), (5); *Bowen v. Eckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Plaintiff first alleges that the ALJ's RFC assessment would better comport with sedentary work because of all of his postural functions which are limited to occasional.   However, the VE considered all of these limitations and concluded that plaintiff could perform certain jobs in the light work category.  Furthermore, the ALJ clearly set out her reasons for placing plaintiff's RFC in the light category.  Plaintiff simply disagrees with her conclusions.  He cites no authority and gives no reason as to why his postural limitations would reduce his RFC to a sedentary level. Nonetheless, as set out above, there was substantial evidence for the ALJ's conclusions in this regard.  Because the Court finds that the ALJ's decision that plaintiff could still perform some light work is supported by substantial evidence, his

argument that the ALJ should have found him to be disabled based on his age need not be addressed.

Plaintiff also argues that the ALJ should have found his dyspnea on exertion to be a "severe" impairment. The ALJ correctly noted that an impairment, or combination of impairments, is "severe" if it significantly limits an individual's ability to do basic work activities. *See* 20 C.F.R. § 416.920(c). An impairment is also not "severe" if it is a slight abnormality or combination of slight abnormalities that causes no more than a minimal effect on an individual's ability to work. *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); Social Security Ruling ("SSR") 85-28, 1985 WL 56856 at * 3 (1985). Plaintiff bears the initial burden of proving that he has an impairment that is severe. *See Yuckert*, 482 U.S. at 146 n.5, 107 S.Ct. at 2294; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). In her decision, the ALJ discussed plaintiff's alleged shortness of breath and noted that there was no support for this claim in the medical evidence. Plaintiff's cardiovascular and pulmonary examinations were normal. Dr. Gregory Thomas found that plaintiff's lungs were clear and that he heart had a normal rate and rhythm. When examined by Dr. Touger, plaintiff had a clear chest without rales, rhonchi or wheezes. (Tr. 26, 28). His diagnosis of dyspnea with exertion was based solely on plaintiff's subjective report that he could not walk more than two blocks without becoming short of breath. (Tr.

224).  The ALJ also noted that plaintiff's echocardiogram was normal with regular rate and rhythm and no murmurs, rubs or gallops.  (Tr. 222).  Thus, there is substantial evidence to support the ALJ's conclusion that plaintiff's dyspnea on exertion was not "severe."  *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("the mere existence of impairments does not reveal the extent to which they limit [plaintiff's] ability to work or undermine the ALJ's determination in that regard.").  It is the functional limitations that result from impairments, not the impairments themselves, which may affect a claimant's ability to work.  *See* 20 C.F.R. § 416.945(a); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (a mere diagnosis says nothing about the severity of the impairment).

Nevertheless, the ALJ recognized that, when determining a claimant's RFC, she must consider all of a claimant's impairments, including those which are not "severe." (Tr. 22).  She clearly did so.  When making her determination of plaintiff's RFC, the ALJ noted that Dr. Maloof was of the opinion that plaintiff's exertion level was medium.  However, giving consideration to Dr. Touger's opinions, she lowered it to a light level.

Plaintiff also asserts that the ALJ should have contacted Dr. Touger for another consultative examination ("CE") and a clarification of his opinions regarding plaintiff's limitations and impairments.  Regulations allow for this to "resolve an

inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 416.919a(b).

Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (citation omitted). Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 416.912(a) (stating that "[claimant] must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912(c) (stating "[y]our responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled"); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Title 42 U.S.C. § 405(g) does not require absolute medical certainty. It only requires substantial evidence to sustain the Secretary's findings. *Holladay v. Bowen*, 848 F.2d 1206 (11th Cir. 1988). Based upon the evidence presented by plaintiff in support of his claim, the record was sufficient for the ALJ to make an informed

decision regarding plaintiff's condition.  Thus, plaintiff has failed to show the ALJ did not fully develop the record by not ordering a consultative examination. Furthermore, plaintiff has not identified any inconsistency in the evidence or indicated that his physical condition is any worse than when he was examined by Dr. Touger and Dr. Maloof.  Thus, he has not demonstrated any prejudice resulting from the failure of the ALJ to order another CE.

As noted by defendant, plaintiff's reference to 20 C.F.R. § 416.927(c) is outdated.  This regulation was changed effective March 26, 2012.  *See* 20 C.F.R. § 416.920b.  These regulations replace 20 C.F.R. § 416.927(c)(2011) and the portion of SSR 96-5p that interpreted the recontacting provisions within 20 C.F.R. § 416.927(c).  *See* 77 Fed. Reg. 10,651; 10,655-57.  Under these new regulations, recontacting a medical source is not required.  Whether to recontact a medical source is now within the ALJ's discretion.  *See* 20 C.F.R. § 416.1520b(c)(1) (stating that an ALJ "*may* recontact [a claimant's] treating physician, psychologist, or other medical source." (emphasis added).  Thus, while the ALJ could have recontacted Dr. Touger, it was not mandatory that she do so.  In this case, it is not necessary because the ALJ was able to make an informed decision based upon the medical records and the hearing testimony.

Plaintiff also argues that the ALJ should have assessed a sedentary RFC because she did not explicitly state how plaintiff could carry 20 pounds even with the aid of a helper hand.  (Pl. Br. at 8-9).  However, plaintiff would not have to carry 20 pounds.  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at * 5-6 (1983).  Light work does not necessarily require lifting 20 pounds, for a job also qualifies as light "when it requires a good deal of walking or standing. . . ." 20 C.F.R. § 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at * 5-6 (1983).  Jobs of this type would include counter clerks and ticket sellers.  Consequently, this argument does not advance plaintiff's case.

Although the VE provided the wrong DOT citation for a light cleaner position, a review of the occupational listings reflects that there are cleaning type positions that are "light" in nature, such as Housekeeping Cleaner, DOT # 323.687-014 (Strength L, SVP 2).  Furthermore, the VE listed other occupations that require a light level of exertion outside his past work experience which he could perform with the limitations that he has, such as ticket seller and counter clerk/cashier.

## V.   Conclusion.

In conclusion, it is clear that the ALJ's decision is based on substantial evidence.  Even if the evidence preponderates against the Secretary's factual findings,

this Court must affirm if the decision reached is reasonable and is supported by substantial evidence.  *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  Because the decision finding plaintiff not disabled is based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion," *Bloodsworth*, 703 F.2d at 1239, the decision of the Commissioner is due to be affirmed.  A separate order will be entered.

DONE this 13th day of December, 2013.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE